IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHARLES G. COPELAND, an individual; AND COFOUR, LLC, a limited liability company | § § § § § | |
| Plaintiff, | § § | |
| v. | § § § § | CIVIL ACTION NO. 4:20-CV-00393-SDJ-CAN |
| ALAMO BILLING COMPANY AND MANAMED, INC., | § § § § | |
| Defendants. | § | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

COMES NOW Charles G. Copeland and CoFour, LLC ("Plaintiffs"), and file this, their Second Amended Petition, complaining of Alamo Billing Company and ManaMed, Inc. (collectively, "Defendants"), and for cause of action would respectfully show the Court as follows:

**I.**

**PARTIES**

1.   Plaintiff CoFour, LLC ("CoFour") is a Texas limited liability company doing business in Collin County, Texas.

2.   Plaintiff Charles G. Copeland is an individual residing in Collin County, Texas and is the Manager and sole Member of CoFour, LLC.

3.   Defendant Alamo Billing Company ("Alamo") is a business located in Tampa, Florida and has been served with citation in this matter.

4. Defendant ManaMed, Inc. ("ManaMed") is a business located in Las Vegas, Nevada and has filed an answer in this matter.

## II.

## JURISDICTION AND VENUE

5. Defendants removed the case to this Court from the 471st Judicial District Court of Collin County, Texas on May 13, 2020. Defendants assert that this Court has jurisdiction over this suit under 28 U.S.C.§1332(a)(1) based on diversity jurisdiction.

6. Venue is proper in the Eastern District of Texas, Sherman Division under §1441(a) and (b) because the state court where the suit had been pending is located in this District.

## III.

## FACTUAL BACKGROUND

7. Plaintiff CoFour entered into a contract (the "Agreement") with Alamo Billing Company ("Alamo") in the fall of 2018 for billing services and collections. Alamo stated that it had in-network contracts by which it would collect on 70% of claims submitted within 60-90 days of Plaintiff forwarding the claims to Alamo. Further, Alamo stated in the Agreement that Plaintiff would receive real-time claims access via Alamo's on-line portal regarding its claims and the status of the claims process.

8. To date, Plaintiffs have submitted close to $2 million in clean claims to Alamo, of which Alamo previously advised that it had only collected approximately $350,000 (17%). In addition, Alamo has never consistently provided clear visibility into its submitted claims. Plaintiffs submitted clean billable claims and requested multiple times via email and conference calls with Alamo's executive team, as well as ManaMed's executive team for reporting and updates regarding its claim payments. In response, Alamo and ManaMed provided half-truths, as well as false and incomplete information regarding the status of the claims.

9. Then, in April 2019, Plaintiffs stopped receiving communications from Alamo regarding their collections efforts. In sum, Alamo then went silent regarding its work for Plaintiffs and all of their billed claims. Plaintiffs called, emailed and texted Alamo, and even called ManaMed executive personnel for help in obtaining information, but received misleading and untrue information in response.

10. On October 24, 2019, Plaintiffs received an email from Theresa Morgan from Acc U Data stating she had received money from collections that is due to Plaintiffs. At this time, Plaintiffs were unaware of Acc U Data and why Acc U Data had funds belonging to Plaintiffs. After researching and talking with the CEO of Acc U Data, Rajiv Shah, it was discovered that Acc U Data was actually performing the billing services owed by Alamo to Plaintiffs. Further, Plaintiffs learned from Mr. Shah that it was his understanding that some of the same people who owned ManaMed also owned Alamo. None of these facts had ever been disclosed by Alamo/ManaMed to Plaintiffs.

11. Plaintiffs went to visit Mr. Shah at his Acc U Data office in Florida in an effort to obtain more information regarding the status of the claims submitted to Alamo. It was learned at that time, there were more than 300 open claims outstanding and more than 200 claims that had been denied. None of this information had been disclosed to Plaintiffs by Alamo. It was then decided on November 6th, 2019 by Mr. Shah and by Plaintiffs that the 500 plus claims should be re-submitted immediately. The 500 plus claims were billed on or before November 8th, 2019. Mr. Shah agreed to provide immediate updates on the claims going forward.

12. On November 26th, 2019 Mr. Shah notified Plaintiffs that his access to Co-Four's claims had been removed by Alamo and that his contract had been terminated. He also stated again that he believed Alamo was actually owned by some of the same people who owned ManaMed

and that both Alamo and ManaMed were stealing from Acc U Data and Plaintiffs. To date, Plaintiffs still have received no information from Alamo or ManaMed regarding aforementioned 500 plus claims submitted. It also was brought to Plaintiffs' attention that the claims were being billed under a contract identified as Texas Artificial Limb and Lab ("TALL") based out of El Paso.

13. Plaintiffs only recently learned that Alamo and/or ManaMed has recently received more than $2 million dollars in collections and that the majority of those collections relate to the claims. Based on the information received by Plaintiffs, the total outstanding to Plaintiffs is approximately $1 million dollars.

## IV.

## CAUSES OF ACTION

### A. BREACH OF CONTRACT, FRAUD, THEFT AND UNJUST ENRICHMENT AGAINST ALAMO

14. The facts set forth above are incorporated by reference as if fully set forth herein.

15. Plaintiff CoFour performed its obligations and all conditions precedent under the Agreement by submitting over 500 clean, billable claims to Alamo.

16. Alamo breached the terms of the contract at issue by failing to make the payments for the claims as set forth in the Agreement. Alamo intentionally defrauded and stole money from Plaintiffs and intentionally paid money to ManaMed that was owed to Plaintiffs. Alamo was unjustly enriched by, and unlawfully benefitted from, doing so as a result of common owners between Alamo and ManaMed.

17. Plaintiff CoFour has declared the balance of the Agreement as due and owing. After giving credit for all offsets, payments and refunds allowable, there is due and owing on the Agreement the sum of approximately $1,000,000.00 together with interest thereon at the rate as allowed by the contract and/or by law until paid in full.

### B.  TORTIOUS INTERFERENCE WITH CONTRACT AND FRAUD AGAINST MANAMED

18. The facts set forth above are incorporated by reference as if fully set forth herein.

19. Defendant ManaMed has tortuously interfered with the Agreement. As described above, ManaMed had actual knowledge of the Agreement and Defendant's relationship with Alamo, as some or all of the people who own ManaMed also own and control Alamo.

20. ManaMed, as described above, willfully and intentionally interfered with the Agreement, and committed fraud, by interfering with Alamo's processing of the 500-plus clean and billable claims submitted by Plaintiff.

21. ManaMed further interfered with the Agreement by hiding the identity of the company actually processing the claim and by improperly taking money owed to both Plaintiffs and other companies for processing the claims as described above.

22. As a result, Plaintiffs have suffered damaged relationships and financial loss because Plaintiffs have not recovered the money Plaintiffs are due from the 500-plus clean and billable claims submitted by Plaintiffs.

23. As a result of ManaMed's willful and intentional tortious interference, Plaintiffs are entitled to recover their actual and consequential damages, as well as exemplary damages.

### IV.

### ATTORNEY'S FEES

24. Plaintiffs ask for their attorney's fees and costs from Defendants pursuant to the terms of the contract and as allowed by law. In this regard Plaintiffs will show the amount of reasonable attorney's fees incurred.

## V.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for the following:

a. Defendants be cited to appear and answer this Petition;

b. Judgment of and from Defendants in the sum of $1,000,000, plus attorneys' fees, costs and expenses of this cause of action, together with interest thereon at the rate allowed by the contract and/or by applicable law jointly and severally from Defendants, until paid in full;

c. Reasonable attorneys' fees incurred in this matter; and

d. All costs of suit, and for all such other and further relief, both general and special, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

*/s/ Jennifer M. Wade*
**DAVID L. OVARD**
State Bar No. 24008425
dovard@clarkhill.com
**JENNIFER M. WADE**
State Bar No. 24052640
jmwade@clarkhill.com
**CLARK HILL STRASBURGER**
2600 Dallas Parkway, Suite 600
Frisco, TX 75034
T: (469) 287-3900
F: (469-287-3999
**ATTORNEY FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

   This is to certify that a true and correct copy of the above and foregoing document was filed with the Clerk of the Court on November 5 2020, and that a true and correct copy of the document was served on counsel of record for all parties by electronic mail and/or by electronic service via ECF on November 5, 2020.

                 */s/ Jennifer M. Wade*
                 **JENNIFER M. WADE**