IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHARLES COPELAND, ET AL., § <br> § <br> Plaintiffs, § <br> v. § <br> § <br> ALAMO BILLING COMPANY, ET AL., § <br> § <br> Defendants. § | CIVIL ACTION NO. 4:20-CV-00393-SDJ-CAN |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant ManaMed, Inc.'s Motion for Summary Judgment, and in the Alternative, for Judgment on the Pleadings ("Motion") [Dkt. 57]. Plaintiffs Charles Copeland and CoFour, LLC, who are represented by counsel, failed to file any response.[1] After reviewing the Motion and all other relevant filings, the Court recommends the Motion [Dkt. 57] be **GRANTED**, as set forth herein.

**RELEVANT PROCEDURAL HISTORY**

On April 28, 2020, Plaintiff Charles Copeland ("Copeland"), a Texas resident, originally filed this action in the 471st District Court of Collin County, Texas [Dkts. 1; 1-1]. Therein, Copeland, who at the time was the sole Plaintiff, asserted a claim against Defendants Alamo Billing Company ("Alamo") and ManaMed, Inc. ("ManaMed") (collectively, "Defendants") for breach of contract [Dkt. 1-1 at 16-26].[2] Two weeks later, on May 12, 2020, Defendant ManaMed

---

[1] At the time of initiating the state court litigation, Copeland was the sole plaintiff in this case. It was not until the First Amended Complaint, filed on September 15, 2020, that CoFour purportedly also made an appearance as a plaintiff in this action [Dkt. 27].
[2] ManaMed asserts this first pleading failed "to identify any cognizable claim against ManaMed" [Dkt. 57 at 2].

removed the case to the Eastern District of Texas on the basis of diversity [Dkt. 1].[3] On August 13, 2020, the Court held a Rule 16 scheduling conference; ManaMed appeared but Alamo did not.[4] *See docket generally*. ManaMed moved to dismiss Plaintiff's claims [Dkt. 23], after which Copeland filed an amended complaint adding CoFour, LLC as a plaintiff ("CoFour," collectively with Copeland, "Plaintiffs") [Dkt. 26].[5] On September 15, 2020, Plaintiffs filed a First Amended Complaint and on November 5, 2020, their Second Amended Complaint—the live pleading [Dkt. 43].[6]

The live pleading asserts claims for (1) breach of contract, fraud, theft, and unjust enrichment against Alamo; and (2) tortious interference with contract and fraud against ManaMed [Dkt. 43 at 4-5]. In connection with such claims, Plaintiffs allege in the "Factual Background" of the live pleading that CoFour entered into a contract with Alamo in Fall 2018 for billing services and collections [Dkt. 43 at 2]. Despite a purported agreement whereby Alamo would collect on claims submitted by CoFour within sixty to ninety days of receipt and provide real-time access to Plaintiffs on the status of those claims, Plaintiffs allege Alamo failed to uphold its end of the

---

[3] Alamo is alleged to be a citizen of Florida, and ManaMed a citizen of Nevada [Dkts. 1 at 2; 1-1 at 18]. At the time of removal, Alamo had not yet been served or appeared in the instant cause. The Notice of Removal recites "Defendant Alamo has not been properly joined and served as a defendant in the Action" [Dkt. 1 at 3].

[4] On August 21, 2020, Copeland subsequently filed a Motion for Substituted Service as to Alamo [Dkt. 21]. On December 23, 2020, the Court granted in part and denied in part this motion, permitting Plaintiffs to serve Alamo through service on the Florida Secretary of State [Dkt. 50]. A month later, on January 26, 2021, summons was returned executed [Dkt. 54]. Two days thereafter, Plaintiffs filed a Notice of Service, averring that Alamo "has been served in accordance with the Court's Orders in this matter" [Dkt. 56]. To date, Alamo has not made an appearance in this action, and Plaintiffs have not moved for either default or dismissal related to this Defendant.

[5] CoFour "is a Texas limited liability company doing business in Collin County, Texas" [Dkt. 43 at 1]. "The citizenship of a [LLC] is based on the citizenship of the LLC's members." *Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2019 WL 4861379, at *3 (E.D. Tex. Oct. 2, 2019) (citing *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008)). Copeland, a Texas resident, "is the Manager and sole Member of CoFour, LLC" [Dkt. 43 at 1]. *See generally Mitchell v. Bailey*, 982 F.3d 937, 942 (5th Cir. 2020) (explaining there is "complete diversity" for the purpose of 28 U.S.C. § 1332 when "the citizenship of each plaintiff [is] diverse from the citizenship of each defendant").

[6] The day after filing their Second Amended Complaint, Plaintiffs filed a motion for leave [Dkt. 45]. After reviewing ManaMed's response in opposition [Dkt. 47] and conducting a Rule 15(a) analysis, the Court granted leave to amend [Dkt. 51]. However, the Court "expressly admonishe[d] Plaintiffs that while it will permit this opportunity to file an amended complaint, no further amendment will be permitted prior to the Court addressing any motion to dismiss" [Dkt. 51 at 3-4].

bargain [Dkt. 43 at 2]. Plaintiffs allege they have submitted "close to $2 million in clean claims to Alamo" [Dkt. 43 at 2]. Plaintiffs' pleading further alleges Alamo and ManaMed's executive teams were both involved in the collection efforts, but that at some point in time Alamo "went silent" regarding its work for Plaintiffs [Dkt. 43 at 2]. After unsuccessful attempts to contact Alamo, Plaintiffs claim they discovered "some of the same people who owned ManaMed also owned Alamo" [Dkt. 43 at 3-4]. Plaintiff's "Causes of Action" against ManaMed state in their entirety:

> **TORTIOUS INTERFERENCE WITH CONTRACT AND FRAUD AGAINST MANAMED**
>
> 18. The facts set forth above are incorporated by reference as if fully set forth herein.
> 19. Defendant ManaMed has tortuously interfered with the Agreement. As described above, ManaMed had actual knowledge of the Agreement and Defendant's relationship with Alamo, as some or all of the people who own ManaMed also own and control Alamo.
> 20. ManaMed, as described above, willfully and intentionally interfered with the Agreement, and committed fraud, by interfering with Alamo's processing of the 500-plus clean and billable claims submitted by Plaintiff.
> 21. ManaMed further interfered with the Agreement by hiding the identity of the company actually processing the claim and by improperly taking money owed to both Plaintiffs and other companies for processing the claims as described above.
> 22. As a result, Plaintiffs have suffered damaged relationships and financial loss because Plaintiffs have not recovered the money Plaintiffs are due from the 500-plus clean and billable claims submitted by Plaintiffs.
> 23. As a result of ManaMed's willful and intentional tortious interference, Plaintiffs are entitled to recover their actual and consequential damages, as well as exemplary damages.

[Dkt. 43 at 5]. Plaintiffs seek $1,000,000 in damages, attorney's fees under the contract and as allowed by law, costs, expenses, and interest [Dkt. 43 at 5-6]. They also seek joint and several liability [Dkt. 43 at 5-6].

At the Rule 16 management conference on August 13, 2020, ManaMed expressly raised one of the issues presented by its summary judgment motion: its relationship with Alamo. *See docket generally.* For that reason, the Parties agreed to, and the Court entered, a custom scheduling order that specifically delineated as follows:

> All discovery pertaining to the following three limited issues shall be commenced in time to be completed by [October 13, 2020]:
>
> 1. Whether or not ManaMed, Inc. is a party to the Agreement;
>
> 2. Whether or not ManaMed, Inc. owns Alamo Billing Company; and
>
> 3. Whether or not ManaMed, Inc. is liable for the actions and debts of Alamo Billing Company.

[Dkt. 20 at 1]. ManaMed represents that no discovery on these points was served [Dkt. 57 at 3].

On February 10, 2021, ManaMed filed the instant Motion asking the Court to dismiss Plaintiffs' claims for tortious interference and fraud against it [Dkt. 57].[7] More than two months have passed since the Motion was filed, and Plaintiffs, who again are represented by legal counsel, have not filed any response, asked for an extension of time to respond, or for any additional discovery to be able to respond. Under the local rules, a "party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." Eastern District of Texas Local Rule CV-7(d). The Motion is ripe for consideration.

## SUMMARY JUDGMENT STANDARD

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d) (emphasis added). Here, matters outside the pleadings have been

---

[7] In its Answer, ManaMed has also pleaded the affirmative defense of privilege: "Plaintiffs' claims are barred, in whole or in part, by the affirmative defense of privilege" [Dkt. 52 at 3].

presented by ManaMed, the moving party, and have not been excluded by the Court. Thus, the Court analyzes the pending motion as a motion for summary judgment. *See McGee v. Wilmington Sav. Fund Soc'y FSB*, No. 19-CV-2883-S-BK, 2021 WL 1135035, at *1 (N.D. Tex. Feb. 18, 2021) (converting a motion under both Rule 12(c) and Rule 56 into a standalone Rule 56 motion because the movants submitted evidence in support of their motion). ManaMed provides no authority warranting a different conclusion.

ManaMed moves for summary judgment on Plaintiffs' claims against it. The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses, to help "secure the just, speedy and inexpensive determination of every action." *Nat'l Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 F. App'x 446, 449 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). All inferences must be construed in the light most favorable to the nonmoving party. *See id.*; *Osprey Ship Mgmt. Inc. v. Foster*, 387 F. App'x 425, 429 (5th Cir. 2010). "The substantive law will identify which facts are material. This means only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir. 2019) (citing *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019)) (cleaned up), *cert. denied*, 140 S. Ct. 653 (2019).

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1131 (2019) (affirming the decisions of the lower courts to grant summary judgment in favor of the state where the plaintiff presented "insufficient evidence . . . to avoid summary judgment"). "[W]here the movant bears the burden of proof at trial, the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.'" *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (citation omitted). However, if the movant does not bear the burden of proof at trial, the movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Gonzales v. ConocoPhillips Co.*, 806 F. App'x 289, 291 (5th Cir. 2020) (citing *Celotex*, 477 U.S. at 323). Once the movant has carried its burden, the nonmovant "must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Malbrough v. Stelly*, 814 F. App'x 798, 802 (5th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50). Moreover, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [the nonmovant's] unsworn pleadings, which do not constitute summary judgment evidence[,]" and a court may accept as undisputed the movant's evidence. *Allstate Vehicle & Prop. Ins. Co. v. Daum*, No. 3:20-CV-0671-D, 2020 WL 4883956, at *2 (N.D. Tex. Aug. 20, 2020) (citing *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996)).

## UNDISPUTED SUMMARY JUDGMENT EVIDENCE

ManaMed submits the following evidence in support of its Motion for Summary Judgment:

Exhibit 1: Signed, sworn, and dated Declaration of Senior Associate Mitchell R. Garrett from Ryan Law Partners LLP (Feb. 10, 2021) [Dkt. 57-1 at 1-3]; and

Exhibit 1-A: "Plaintiffs' Answers to Defendant ManaMed, Inc's Interrogatories" and a signed Verification submitted by Copeland (Feb. 3, 2021) [Dkt. 57-1 at 5-13].

No objections have been made to ManaMed's summary judgment evidence, nor have Plaintiffs proffered any affirmative evidence in support of their claims.[8]

The summary judgment record is sparse; ManaMed's summary judgment motion advances that the record evidence demonstrates the following facts, which dictate dismissal of ManaMed from this action: (1) Plaintiff CoFour and Alamo entered into a contract in Fall 2018 for billing services and collections with Defendant Alamo [Dkt. 57-1 at 7]; (2) Starting "in April 2019, Plaintiffs stopped receiving any communications regarding collection's efforts" [Dkt. 57-1 at 7]; (3) "[T]here is a common ownership amongst" ManaMed and Alamo [Dkt. 57-1 at 7]; and (4) ManaMed and Entity are "essentially run[ ] . . . as one and the same entity" [Dkt. 57-1 at 7].

## ANALYSIS

Plaintiffs assert two claims against ManaMed—tortious interference and fraud.[9] In support of dismissal of both claims, ManaMed argues "Plaintiffs fail to establish either of their claims for tortious interference or fraud" [Dkt. 57 at 5]. Specifically, ManaMed's dispositive motion

---

[8] ManaMed avers that "Plaintiffs did not serve a single timely discovery request or depose a single person in this lawsuit" [Dkt. 57 at 3]. As ManaMed points out, the Scheduling Order provides that discovery should be commenced "in time to be completed by" January 28, 2021 [Dkt. 20 at 2]. ManaMed represents that CoFour served a discovery request on January 28, 2021—the final day under the Scheduling Order—"and will likely seek a continuance under Rule 16 or 56(d)" [Dkt. 57 at 3 n.1]. However, Plaintiffs have filed no request with the Court since ManaMed filed its Motion for Summary Judgment on February 10, 2021 requesting additional time to respond or to seek further discovery; indeed, as the Court notes multiple times, though represented by counsel, Plaintiffs have failed to respond to the pending summary judgment.

[9] "In a diversity case, we apply federal procedural rules and state substantive law." *Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 925 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).

advances three arguments: (1) a parent company cannot be held liable for tortiously interference with its subsidiary's contract; (2) Plaintiffs' fraud claim is barred by the economic loss rule; and (3) there is no evidence of any fraudulent statement by ManaMed or duty by ManaMed to disclose any fact exists [Dkt. 57 at 5]. ManaMed also more broadly advances that Plaintiffs have failed to properly plead or establish any claim against it. Upon consideration of these grounds, the Court agrees; on the record presently before it, Plaintiffs' claims for tortious interference and fraud should be dismissed with prejudice.

*Tortious Interference*

The live pleading alleges ManaMed tortiously interfered with the contract between Plaintiff CoFour and Alamo. Plaintiffs plead "ManaMed had actual knowledge of the [contract] and Defendant's relationship with Alamo, as some or all of the people who own ManaMed also own and control Alamo" [Dkt. 43 at 3, 5]; ManaMed interfered with the contract by hiding "the identity of the company actually processing the claim" and taking money owed to Plaintiffs [Dkt. 43 at 5]. ManaMed broadly rejoins that Plaintiffs fail to establish a claim for tortious interference. More specifically, ManaMed takes issue with the first element of a tortious interference claim, arguing "Plaintiffs are relying on the oft-rejected theory that a parent can be liable for tortiously interfering with a contract of its subsidiary which its runs" [Dkt. 57 at 1, 5]. ManaMed points to Plaintiffs responses to interrogatories to support its status as a parent of Alamo [Dkt. 57 at 2, 5].[10]

---

[10] S*ee* Eastern District of Texas Local Rule CV-56(d) (listing "proper summary judgment evidence" as including "answers to interrogatories"). "Interrogatory responses may constitute competent summary judgment evidence if they satisfy the other requirements of Rule 56." *Tesco Corp. v. Weatherford Intern., Inc.*, 904 F. Supp. 2d 622, 636 (S.D. Tex. 2012) (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2722 at 51-52 (1983)). "Verified or sworn pleadings are competent summary judgment evidence; unverified answers to interrogatories and interrogatories not based on personal knowledge are not." *Id.* (citing *Fowler v. S. Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965); *Brady v. Blue Cross and Blue Shield of Tex., Inc.*, 767 F. Supp. 131, 135 (N.D. Tex. 1991)). Here, Copeland verified the answers to Defendants' interrogatories, stating "the factual statements contained therein are within my personal knowledge and are true and correct" and signing the document "under penalty of perjury" [Dkt. 57-1 at 13]. *See J&J Sports Productions, Inc. v. Tepatitlan Mexican Kitchen, Inc.*, No. H-15-2666, 2016 WL 8710461,

"To establish a claim for tortious interference with a contract, a plaintiff must establish: (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002)); *see Domain Prot., LLC v. Sea Wasp, LLC*, 426 F. Supp. 3d 355, 386 (E.D. Tex. 2019). "The party alleging tortious interference has the burden of proving each element of the claim." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674 (S.D. Tex. 2010) (citing *Dunn v. Calahan*, No. 03–05–00426–CV, 2008 WL 5264886, at *3 (Tex. App.—Austin Dec. 17, 2008, pet. denied) (mem. op.)). "A defendant may defeat a tortious-interference claim on summary judgment by disproving at least one element of the claim as a matter of law." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 588 (Tex. 2017) (citing *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998) (per curiam)).

"To prove the willful and intentional interference element of a tortious interference claim"—the second element—"the plaintiff must show that the defendant was legally capable of tortious interference." *Hansen*, 525 S.W.3d at 689 at 690 (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995)). "To be legally capable of tortious interference," in turn, "the defendant must be a stranger to the contract with which he allegedly interfered." *Id.* (citing *Holloway*, 525 S.W.2d at 794-95). The Western District of Texas recently examined the issue ManaMed presents in its filing—whether, under Texas law, a parent company can tortiously interference with the

---

at *5 (S.D. Tex. Oct. 21, 2016) (crediting a verified interrogatory response as competent summary judgment evidence). Moreover, Copeland does not contest the instant Motion for Summary Judgment or evidence attached thereto and referenced by Defendant ManaMed.  Under the local rules, "the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the responsive brief filed in opposition to the motion, as supported by proper summary judgment evidence." Eastern District of Texas Local Rule CV-56(c).

contracts of its subsidiary.  The *ProTradeNet* court first recognized that the Supreme Court of Texas has "held that there can be no tortious interference when there is a complete identity of interests between a party to a contract and the defendant who is accused of interfering with the contract."  *ProTradeNet, LLC v. Predictive Profiles, Inc.*, 369 F. Supp. 3d 788, 791 (W.D. Tex. 2019) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795, 797 (Tex. 1995)).  After examining a number of decisions by Texas appellate courts, the *ProTradeNet* court acknowledged these other courts "have held that a corporate parent and its subsidiaries are so closely aligned that the parent company is incapable of tortiously interfering with its subsidiary's contracts."  *Id.*  Also noting the Fifth Circuit's examination of this issue decades ago, the *ProTradeNet* court highlighted "the Fifth Circuit [holding] that a parent company and its subsidiary are so closely aligned in their business interests as to render them, for tortious interference purposes, the same entity."  *Id.* at 791-92 (citing *Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1196-97 (5th Cir. 1985)).  Thus, in *ProTradeNet*, the court dismissed the tortious interference claim after holding "a corporate parent is incapable of tortiously interfering with the contracts of its subsidiary."  *Id.* at 793.[11]

In the case at bar, Plaintiffs allege CoFour entered into a contract with Alamo in Fall 2018 for billing services and collections—a contract Alamo failed to fulfill [Dkt. 43 at 2].  Assuming the truth of the cited portions of Plaintiff's interrogatory responses, the record demonstrates "there is a common ownership amongst" ManaMed and Alamo; the two entities are "essentially run[ ]" by three co-owners—John Lasso, Trevor Theriot, and Joe Horton—"as one and the same entity"

---

[11] Although some cases have stated the rule in the context of wholly owned subsidiaries, *see, e.g.*, *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Properties, L.C.*, 323 S.W.3d 322, 348 (Tex. App.—Beaumont 2010, pet. denied) (concluding "a parent company cannot tortiously interfere with the contracts of its wholly owned subsidiary"), *ProTradeNet, LLC* contained no such limiting language.  *See, e.g.*, 369 F. Supp. 3d at 791 ("[A] parent company cannot tortiously interfere with its subsidiary's contracts[.]"); *id.* at 792 ("[T]he Western District of Texas has already held that a parent company cannot tortiously interfere with the contracts of its subsidiary."); *id.* at 793 ("[A] corporate parent is incapable of tortiously interfering with the contracts of its subsidiary.").

[Dkt. 57-1 at 7]. These three co-owners "each have owned, managed and financially benefitted from, one-third interests of Defendant ManaMed, Inc. and each also have owned, managed and financially one-third interests of ninety percent of Defendant Alamo Billing Company" [Dkt. 57-1 at 7]. ManaMed points to these facts to support its status as the corporate parent of Alamo and to urge that a tortious interference claim cannot be sustained. A "subsidiary corporation," also known as a "subsidiary," is a "corporation in which a parent corporation has a controlling share." *Corporation*, BLACK'S LAW DICTIONARY (11th ed. 2019). Again, the record demonstrates that there are three individuals who own both 100% of the shares in ManaMed and 90% of the shares of Alamo. There is no affirmative declaration by ManaMed that it is a parent of Alamo. And there are other statements in the interrogatories beyond those few facts cited by ManaMed—including statements that cut against ManaMed's arguments on the issue of privilege. Thus, the Court is unprepared to conclude on the limited record before it that ManaMed and Alamo have a corporate-parent-subsidiary relationship or "complete identity of interests" that falls within the scope of *ProTradeNet* and related case law. *Contra In re iHeartMedia, Inc.*, 597 B.R. 339, 362 (Bankr. S.D. Tex. 2019) (finding a corporate entity "and its subsidiaries' interests are aligned," which precludes a tortious interference claim under Texas law).[12]

---

[12] ManaMed has pleaded the affirmative defense of privilege. As a general rule, "[w]hen summary judgment is sought on an affirmative defense, as here, the movant 'must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). More specific to the instant case, "[p]rivilege to interfere with a contract is an affirmative defense on which [the defendant] had the burden of persuasion." *Am. Nat. Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 279 (Tex. 1990) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)); *see Bar Group, LLC v. Bus. Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 557 (S.D. Tex. 2017) (noting in passing that a defendant "bears the burden of proof on its affirmative defense of privilege or justification"); *Hightower v. Kidde-Fenwal, Inc.*, 159 F. App'x 555, 556 n.1 (5th Cir. 2005) ("Privilege and justification are affirmative defenses to tortious interference with contract in Texas."). As the Northern District of Texas more recently stated, "[p]rivilege or justification is an affirmative defense to a tortious interference claim." *Randall v. L-3 Communications Corp.*, No. 3:16-CV-3000-G, 2017 WL 2189432, at *8 (N.D. Tex. May 18, 2017) (citing *Prudential Insurance Company of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 80 (Tex. 2000); *Texas Beef Cattle Company v. Green*, 921 S.W.2d 203, 210 (Tex. 1996)). The *Randall* court found the defendant did "not meet his burden of establishing the affirmative defense of privilege or jurisdiction" and thus denied the motion

Notwithstanding, the Court agrees with ManaMed's broader argument that Plaintiffs fail to establish a claim for tortious interference. There is no summary judgment evidence supporting the elements of Plaintiffs' claim for tortious interference. While ManaMed does not dispute the existence of a valid contract, there is no evidence that ManaMed willfully and intentionally interfered with any contract. "[W]ithout sufficient proof that the defendant's conduct resulted in 'some obligatory provision of a contract having been breached,' the plaintiff[s'] tortious interference [with contractual relations] claim is infirm as a matter of law." *WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 354 (5th Cir. 2021) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 749 (5th Cir. 2019)) (alteration omitted). Further, there is no summary judgment evidence that any interference by ManaMed proximately caused Plaintiffs actual damage or loss. *See Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, 553 F. Supp. 2d 680, 694 (N.D. Tex. 2008) (granting summary judgment on a tortious interference with a contract claim because the plaintiff "has not presented evidence on proximate causation"). "Plaintiffs' failure to produce proof as to any essential element of the claim renders all other facts immaterial." *Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-CV-2970-D, 2018 WL 3868703, at *6 (N.D. Tex. Aug. 14, 2018) (citing *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007)). And "[s]ummary judgment is mandatory where plaintiffs fail to meet this burden." *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). Thus, ManaMed is entitled to summary judgment on Plaintiffs' tortious

---

to dismiss. 2017 WL 2189432, at *9-10. At the summary-judgment stage, however, this case is more akin to *Worldpak Intern., LLC v. Diablo Valley Packaging, Inc.*, No. 4:08-CV-00469, 2010 WL 3657335, at *8 (E.D. Tex. Aug. 26, 2010), *report and recommendation adopted*, No. 4:08-CV-00469, 2010 WL 3657142 (E.D. Tex. Sept. 14, 2010). There, the defendant argued the plaintiff's "tortious interference with contract claim fails because [the defendant] has established an affirmative defense of justification or privilege." *Id.* at *5. After evaluating the evidence, the Court concluded the defendant failed to conclusively establish its affirmative defense, which warranted denying the defendant's motion for summary judgment as to the claim for tortious interference with existing contract. *Id.* at *7-8. ManaMed fails to conclusively establish privilege. But as the Court details herein, ManaMed is entitled to relief.

interference claim. *See Rimkus Consulting*, 688 F. Supp. 2d at 674 (granting summary judgment in favor of the defendant because the plaintiff failed to identify a written or an enforceable oral contract, provide evidence that the defendants' customers or clients had a contractual obligation, and provide evidence that the defendants induced a customer or client to breach any obligation).

*Fraud*

ManaMed also moves for dismissal of Plaintiffs' fraud claim, arguing (1) "Plaintiffs fail to meet the heightened standard under Rule 9(b)"; (2) "Plaintiffs' alleged damages in fraud are no more than the amounts due under the contract with Alamo" (i.e., the economic loss rule); and (3) "Plaintiffs have failed to identify any statement, omission, or duty to correct any misstatement with respect to ManaMed that would have changed Plaintiffs' decision to enter into a contract with Alamo" [Dkt. 57 at 2, 5, 7].

### *Heightened Standard Under Rule 9(b)*

The elements of common-law fraud under Texas law are: "(1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, and (6) it caused injury." *Bates Energy Oil & Gas v. Complete Oilfield Services*, 361 F. Supp. 3d 633, 660 (W.D. Tex. 2019) (citing *Jacked UP, LLC v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017)). "Where fraud is alleged [in federal court], Federal Rule of Civil Procedure 9(b) creates a heightened pleading requirement that the circumstances constituting fraud or mistake shall be stated with particularity." *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 981 (5th Cir. 2019) (citing *U.S. ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 872 (5th Cir. 2008)) (cleaned up). Thus, "a plaintiff must identify the time, place, and contents of the false representations, as well as the identity of the person making the

misrepresentation and what that person obtained thereby." *Mun. Employees' Ret. Sys. of Michigan v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (citing *Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 899 (5th Cir. 2018)) (cleaned up).

Here, Plaintiffs have not met the heightened standard under Rule 9(b). Plaintiffs lump together their two claims under a single heading with text totaling less than a page [Dkt. 43 at 5]. The allegations are sparse and at present unsupported by any evidence. Plaintiffs' live pleading identifies the person, ManaMed, who allegedly committed fraud [Dkt. 43 at 5]. But the live pleading does not identify the time, place, contents of the false representations, or what ManaMed obtained thereby. And here now, at the summary judgment stage, there is no evidence of any of the requirements under Rule 9(b). For example, "proof of injury is an essential element of fraud under Texas law." *Langlois v. Wells Fargo Bank Nat'l Ass'n*, 581 F. App'x 421, 427 (5th Cir. 2014) (citing *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex. 2009)). But Plaintiffs do not point to evidence of an injury. *See Tafacory v. Deutsche Bank Nat'l Tr. Co.*, No. 4:19-CV-00886-SDJ-CAN, 2020 WL 7658070, at *13 (E.D. Tex. Nov. 6, 2020) (recommending dismissal of a fraudulent misrepresentation and negligent misrepresentation claim in part because the plaintiff failed to point to evidence of an injury), *report and recommendation adopted*, No. 4:19-CV-886-SDJ, 2021 WL 958544 (E.D. Tex. Mar. 15, 2021). Thus, the Court agrees with ManaMed that Plaintiffs have not met the heightened pleading standard under Rule 9(b); on this basis alone, similar to the Court's finding on Plaintiffs' tortious interference claim, the fraud claim should be dismissed. *See Stoker v. Select Portfolio Servicing, Inc.*, No. 3:19-CV-00909-N-BT, 2020 WL 1427036, at *6 (N.D. Tex. Mar. 5, 2020) (recommending the defendant be awarded summary judgment because the plaintiff's live pleading "does not specify when this representation was made; where it was made; the identity of the speaker; or what the speaker obtained by making

this false representation" and because the plaintiff failed "to supplement her deficient allegations" by responding to the dispositive motion), *report and recommendation adopted*, No. 3:19-CV-00909-N-BT, 2020 WL 1342087 (N.D. Tex. Mar. 23, 2020); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (explaining that a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent"). Nonetheless, the Court still addresses the economic loss rule and duty to disclose—each of which also support dismissal.

### *Economic Loss Rule*

ManaMed argues the economic loss rule bars Plaintiffs' fraud claim [Dkt. 57 at 7]. Under Texas law, the economic loss rule prevents parties from using artful pleading to recast contract claims as tort claims. *Mem'l Hermann Healthcare Sys., Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) ("The Texas Supreme Court has unequivocally adopted a broad interpretation of the economic loss rule."). The rule is straightforward: "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties." *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 243 (Tex. 2014) (citation omitted); *see Blackhawk Paving, Inc. v. CPCM, LLC*, No. 4:20-CV-48-SDJ, 2021 WL 1152836, at *1 (E.D. Tex. Mar. 26, 2021). This means that tort claims are "generally bar[red] . . . when no factual basis for the tort claim would exist had the defendant complied with the contract." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 726 (5th Cir. 2015) (citing *Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 128 (Tex. App.—Houston [14th Dist.] 2006)).

Plaintiffs plead that ManaMed is liable for fraud because it "interfered with Alamo's processing of the 500-plus clean and billable claims," hid "the identity of the company actually

processing the claim," and "improperly t[ook] money owed to both Plaintiffs and other companies for processing the claims" [Dkt. 43 at 5]. Plaintiffs thus seek $1,000,000 in damages—the same amount that "is due and owing on the" contract with Alamo. "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (citing *Mid-Continent Aircraft Corp. v. Curry County Spraying Service*, 572 S.W.2d 308, 312 (Tex. 1978); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977)); *see Cotter & Sons, Inc. v. BJ Corp.*, 549 S.W.3d 715, 726 (Tex. App.—San Antonio 2017, pet. dism'd). Thus, because Plaintiffs' injury is only the economic loss of the contract, their fraud claim should be dismissed. *See Tex. Bank & Tr. Co. v. Zucker*, No. 6:18-CV-525-JDK, 2019 WL 1922044, at *6 (E.D. Tex. Apr. 8, 2019) (finding the plaintiff's fraud claim is barred by the economic loss rule because it "does not allege any tort damages apart from its alleged economic loss under the parties' loan documents"); *Hernandez v. Frazier*, No. SA-11-CA-9-FB, 2012 WL 12895761, at *17 (W.D. Tex. Sept. 14, 2012) (recommending the plaintiffs' fraud claim be dismissed at the summary-judgment stage because the plaintiffs "have adduced no summary judgment evidence of economic harm unrelated to sales governed by the" contract), *report and recommendation adopted*, No. SA-11-CV-0009-DAE, 2013 WL 12142682 (W.D. Tex. Jan. 31, 2013); *cf. Blackhawk Paving, Inc.*, 2021 WL 1152836, at *1 (denying liability in a motion for default judgment because the plaintiff merely recast a claim for breach of contract as claims for fraud and negligent misrepresentation).[13]

---

[13] The Western District of Texas has declined to recognize a common-law fraud exception to the economic-loss doctrine. *Spring St. Apts Waco, LLC v. Philadelphia Indem. Ins. Co.*, No. 6:16-CV-00315-RP-JCM, 2017 WL 5244285, at *5 (W.D. Tex. Apr. 5, 2017).

### *Duty to Speak or Disclose*

ManaMed, interpreting Plaintiffs' fraud claim to further assert a claim for "fraud by omission," additionally urges the Court to dismiss Plaintiffs' fraud claims on the basis that no duty to speak exists [Dkt. 57 at 7-9]. Specifically, ManaMed maintains there was no duty to disclose because ManaMed did not have a fiduciary relationship, there is no allegation of an omission with any particularity, and no allegations on "the type of fact omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the misrepresentations misleading" [Dkt. 57 at 9].

Plaintiffs live pleading outlines that they requested information about claim payments "multiple times" and that Alamo and ManaMed "provided half-truths, as well as false and incomplete information regarding the status of the claims" [Dkt. 43 at 2-3]. Plaintiffs do not clarify what this false and incomplete information consisted of. Instead, they allege Alamo and ManaMed collectively failed to disclose the ownership of ManaMed and Alamo [Dkt. 43 at 3, 5].

"Fraud by omission or non-disclosure is another subcategory of fraud because an omission or non-disclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose." *Guevara v. Lackner*, 447 S.W.3d 566, 578 (Tex. App.—Corpus Christi 2014, no pet.) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997)); *see Howley v. Bankers Standard Ins. Co.*, No. 3:19-CV-2477-L, 2021 WL 913290, at *15 (N.D. Tex. Mar. 10, 2021). A duty to disclose occurs "(1) when there is a confidential or fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression." *Guevara*, 447 S.W.3d at 578 (citing *Brown &*

*Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (op. on reh'g); *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 635 (Tex. App.—San Antonio 1993, writ denied)); *see Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010); *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 975 (N.D. Tex. 2014).

As ManaMed aptly points out, Plaintiffs do not cite or submit competent summary judgment evidence demonstrating a "material misrepresentation" by ManaMed. *See Bates Energy Oil & Gas*, 361 F. Supp. 3d at 660.[14] Nor do Plaintiffs point to or submit competent summary judgment evidence demonstrating a confidential or fiduciary relationship with ManaMed, voluntary disclosure of information by ManaMed, new information that makes ManaMed's earlier representation misleading or untrue, or a partial disclosure by ManaMed that conveys a false impression. *See Guevara*, 447 S.W.3d at 578. Thus, Plaintiffs' fraud claim should be dismissed for this additional reason. *See Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 746-47 (N.D. Tex. 2014) (dismissing a claim for fraud by omission because the plaintiffs failed to plead sufficient facts to establish the defendant owed them a duty to disclose).

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends Defendant ManaMed, Inc.'s Motion for Summary Judgment [Dkt. 57] should be **GRANTED**, and Plaintiffs Charles Copeland and CoFour, LLC's claims against Defendant ManaMed, Inc. be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific

---

[14] "The court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact." Eastern District of Texas Local Rule 56(c).

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 3rd day of May, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE