## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| CHARLES COPELAND, ET AL., | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:20-CV-00393-SDJ- |
| v. | § | CAN |
| | § | |
| ALAMO BILLING COMPANY, ET AL., | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Plaintiffs Charles Copeland and CoFour, LLC's Motion for Default Judgment Against Alamo Billing Company [Dkt. 60]. The Court, after notice was provided to Defendant Alamo, held an evidentiary hearing on August 3, 2021. Defendant Alamo failed to appear [Dkt. 73]. Following Hearing, Plaintiffs supplemented the Motion for Default Judgment [Dkt. 76]. After reviewing the Motion, Supplement,[1] and all other relevant filings, the Court recommends Plaintiffs' Motion for Default Judgment [Dkt. 60] be **GRANTED** as set forth herein.

## RELEVANT PROCEDURAL HISTORY

On April 28, 2020, Plaintiff Charles Copeland ("Copeland") initiated this action in the 471st District Court of Collin County, Texas [Dkts. 1; 1-1]. Following removal, on September 15, 2020, Plaintiffs Copeland and CoFour, LLC ("CoFour") (collectively "Plaintiffs"), filed a First Amended Complaint [Dkt. 26],[2] and on November 5, 2020, their Second Amended Complaint—

---

[1] The Motion and Supplement are referred to collectively herein as the Motion.
[2] The original complaint named only Copeland as a plaintiff; CoFour, LLC, was added as a party in the First Amended Complaint [Dkt. 26].

the live pleading [Dkt. 43].[3]   On December 23, 2020, the Court granted in part and denied in part Copeland's Motion for Substitute Service [Dkt. 21], permitting Plaintiffs to serve Alamo Billing Company ("Alamo" or "Defendant") with the live pleading through service on the Florida Secretary of State [Dkt. 50].  A month later, on January 26, 2021, summons was returned as executed [Dkt. 54].  Plaintiffs filed a Notice of Service, averring that Alamo "has been served in accordance with the Court's Orders in this matter" [Dkt. 56]. To date, Alamo has not made an appearance in this action, has not answered, or otherwise filed a responsive pleading.  At present, Alamo is the sole remaining defendant in this matter.  On May 3, 2021, the Court ordered Plaintiffs to move forward with default or dismissal as to Alamo [Dkt. 59].

### Motion for Default Judgment and Supplement Thereto

Plaintiffs filed their original Motion for Default Judgment against Alamo only on May 17, 2021 [Dkt. 60].  The Court initially recommended the filing be denied as premature; but later withdrew such recommendation upon Plaintiffs' request on June 2, 2021 for a Clerk's Entry of Default [Dkt. 65].[4]   Attached to Plaintiffs' Request for Clerk's Entry of Default, pursuant to Federal Rules of Civil Procedure 55(a), was a signed declaration averring that Alamo was served with process, has failed to serve an answer or other response, was not granted an extension or any extension has expired, is not an infant or incompetent, and was not in active military service of the United States at least six months prior to the filing of the case [Dkt. 65].  The Clerk's Entry of Default as to Alamo was entered on June 2, 2021 [Dkt. 67].

The Court set a hearing on Plaintiffs' Motion for Default Judgment to hear argument and evidence in support of the relief requested by Plaintiffs, including specifically the amount of any

---

[3] The day after filing the Second Amended Complaint, Plaintiffs filed a motion for leave [Dkt. 45].  After reviewing ManaMed's response in opposition [Dkt. 47] and conducting a Rule 15(a) analysis, the Court granted leave [Dkt. 51].
[4] Plaintiffs' Motion avers that Alamo is a Florida corporation with its principal place of business located in Tampa, Florida [Dkts. 65 at 2; 65-3].

damages and attorney's fees [Dkt. 70].  On August 3, 2021, the Court conducted an evidentiary hearing.  Notice of hearing was provided to Alamo but returned undeliverable [Dkt. 71].  Alamo did not appear at Hearing [Dkt. 73].  At hearing, Plaintiffs' counsel appeared.  Upon Plaintiffs' oral request, the Court permitted Plaintiffs to supplement their pending Motion for Default Judgment with additional authority and evidence substantiating the relief requested [Dkt. 72]. On August 17, 2021, Plaintiffs filed the Supplement to the Motion for Default Judgment [Dkt. 76].  The Supplement was served on Alamo [Dkt. 76].

By way of the Motion, Plaintiffs seek a default judgment "based exclusively on their claim against Alamo for breach of contract" [Dkt. 76 at 12].  Plaintiffs aver they seek to voluntarily dismiss all other remaining claims asserted against Alamo [Dkt. 76 at 12].  In connection with the breach of contract claim, Plaintiffs' Second Amended Complaint alleges CoFour, who engages in the sale of durable medical equipment, entered into a contract with Alamo in Fall 2018 for third-party billing services and collections [Dkt. 43 at 2].  Specifically, effective September 1, 2018, CoFour and Alamo entered into the Billing & Contract Access Services Agreement ("Agreement") [Dkt. 76].  Under the Agreement, Alamo agreed to process and file CoFour's medical insurance claims.  As consideration for its services, CoFour agreed to pay Alamo a service fee of twenty percent (20%) of all amounts recovered by Alamo.  Plaintiffs allege Alamo failed to uphold its end of the bargain [Dkt. 43 at 2].  The live pleading continues:

> 15. Plaintiff CoFour performed its obligations and all conditions precedent under the Agreement by submitting over 500 clean, billable claims to Alamo.
>
> 16. Alamo breached the terms of the contract at issue by failing to make the payments for the claims as set forth in the Agreement. Alamo intentionally defrauded and stole money from Plaintiffs and intentionally paid money to ManaMed that was owed to Plaintiffs. Alamo was unjustly enriched by, and unlawfully benefitted from, doing so as a result of common owners between Alamo and ManaMed.
>
> 17. Plaintiff CoFour has declared the balance of the Agreement as due and owing. After giving credit for all offsets, payments and refunds allowable, there is

> due and owing on the Agreement the sum of approximately $1,000,000.00 together with interest thereon at the rate as allowed by the contract and/or by law until paid in full.

[Dkt. 43 at 5].  Plaintiffs have submitted "close to $2 million in clean claims to Alamo" [Dkt. 43 at 2]; the Motion further expounds that CoFour submitted no less than 1,085 claims to be collected by Alamo, that it has maintained a Master Claim Report of all those claims submitted to Alamo, and that it has suffered significant monetary harm because of Alamo's breaches.  The live pleading avers Alamo was involved in collection efforts, but that at some point in time in 2019, Alamo "went silent" regarding its work for CoFour, and Plaintiffs' attempts to contact Alamo were unsuccessful [Dkt. 43 at 2-3].  For Alamo's breach, Plaintiffs seek an award of $1,077,995.58, more specifically: (1) actual and compensatory damages of $1,050,536.04 for breach of contract; (2) attorney's fees of $25,514.74, after segregating fees not attributable to prosecuting Plaintiffs' contract claims against Alamo; and (3) $1,944.80 in costs [Dkt. 76 at 1].  Plaintiffs also seek post-judgment interest [Dkt. 76 at 1].  Plaintiffs submitted the following evidence in support of the requested default judgment.

Motion for Default Judgment:

Exhibit 1: Proposed Order Granting Plaintiffs' Motion for Default Judgment Against Defendant Alamo Billing Company [Dkt. 60-1].

Request for Clerk's Entry of Default are:

Exhibit 1 – Declaration of David Ovard in Support of Clerk's Entry of Default [Dkt. 65-1];

Exhibit 2 – Declaration of Gavin Copeland in Support of Clerk's Entry of Default [Dkt. 65-2];

Exhibit 3 – Electronic Articles of Incorporation of Alamo Billing Company [Dkt. 65-3];

Exhibit 4 – Billing & Contract Access Services Agreement [Dkt. 65-4]; and

Exhibit 5 – Proposed Order for Clerk's Entry of Default [Dkt. 65-5].

Supplement to Motion for Default Judgment:

> Exhibit A – Business Records Declaration of Charles G. Copeland in Support of Supplement to Motion for Default Judgment [Dkt. 76-1 at 1-4];

> Exhibit A-1 – Billing & Contract Access Services Agreement [Dkt. 76-1 at 5-13];

> Exhibit A-2 – Go-Four's Master Claim Report [Dkt. 76-1 at 14-25];

> Exhibit A-3 – Co-Four's April 24, 2019 Aging Report [Dkt. 76-1 at 26-27];

> Exhibit A-4 – Co-Four's May 24, 2019 Aging Report [Dkt. 76-1 at 28-29];

> Exhibit A-5 – Co-Four's June 18, 2019 Aging Report [Dkt. 76-1 at 30-31];

> Exhibit B – Supplemental Business Records Declaration of David Ovard Regarding Fees and Costs [Dkt. 76-2 at 1-5];

> Exhibit B-1 – Clark Hill's July 20, 2020 invoice [Dkt. 76-2 at 6-9];

> Exhibit B-2 – October 23, 2020 Invoice [Dkt. 76-2 at 10-15];

> Exhibit B-3 – November 19, 2020 [Dkt. 76-2 at 16-19];

> Exhibit B-4 – Attorney's Fees from January 1, 2021 through filing [Dkt. 76-2 at 20-23]; and

> Exhibit B-5 – Clark Hill's Court Costs and Fees from January 1, 2021 through filing [Dkt. 76-2 at 24-25].

In addition, at Hearing, one exhibit was submitted, a further Declaration of David Ovard [Dkt. 74].

No objections have been raised to Plaintiffs' evidence.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets forth the conditions upon which default may be entered against a party, as well as the procedure to seek the entry of default judgment. *See* FED. R. CIV. P. 55. Securing a default judgment involves a three-step procedure: (1) the defendant's default; (2) the entry of default; and (3) the entry of default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A "default" occurs when the defendant does

not plead or otherwise respond to the complaint.  *Id.*  An "entry of default" is the notation the clerk makes after the default is established by affidavit.  *Id.*  Here, because Alamo has failed to properly answer or otherwise appear to defend against Plaintiffs' claims and Plaintiffs have obtained an entry of default from the Clerk, the first two requisites for a default judgment have been met.  Thus, the only remaining issue for determination is whether a default judgment is warranted.

Entry of default judgment is within the Court's discretion.  *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977); *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004); FED. R. CIV. P. 55(b).  "In determining whether to enter a default judgment against a defendant, Courts in the Fifth Circuit utilize a three-part analysis: 1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive."  *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing *Lindsey*, 161 F.3d at 893).  "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  *Nishimatsu Constr. Co. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Ohio Cent. R.R. Co. v. Cent. Tr. Co. of N.Y., 1889*, 133 U.S. 83 (1890)).  On the other hand, "a defendant's default does not concede the truth of allegations of the complaint concerning damages."  *Graham*, 2017 WL 2600318, at *1 (citing *Jackson v. FIE Corp.*, 302 F.3d 151, 524-25 (5th Cir. 2002)).  Having reviewed the record, the Court finds that entry of a default judgment is warranted, as set forth herein.

# ANALYSIS

## *Default Judgment is Procedurally Warranted*

"The Court must first determine whether a default judgment is procedurally warranted."

*Id.* at *2 (citing *Lindsey*, 161 F.3d at 893).  There are six factors relevant to this inquiry:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by good faith mistake or excusable neglect; [5] the harshness of default judgment; and [6] whether the court would think itself obligated to set aside the default on the defendant's motion.

*Id.*  On balance, here, the factors favor granting default judgment against Alamo.  There are no material issues of fact in the instant case.  *See id.* ("[W]hen a defendant defaults, he admits to the plaintiff's well-pleaded allegations of fact, and therefore, there are no material issues of fact.").  Plaintiffs' interests are prejudiced because Alamo has not answered the Second Amended Complaint or otherwise defended the matter, nor is there any indication that it intends to appear or otherwise respond.  *See United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (citing *Lindsey*, 161 F.3d at 893).  The instant Motion has been on file for months with no response.  This silence and noncompliance establish that any prejudice to Alamo or harshness of a default judgment is outweighed by the prejudice to Plaintiffs if the Court fails to enter judgment in Plaintiffs' favor.  *See Am. Heritage Life Ins. Co. v. Mitchell*, No. 6:15-CV-95, 2016 WL 3883029, at *3 (E.D. Tex. May 24, 2016) (observing that the "failure to file any responsive pleading or motion mitigates the harshness of a default judgment"), *report and recommendation adopted*, No. 6:15-CV-95-MHS-JDL, 2016 WL 3855257 (E.D. Tex. July 15, 2016).  Also, the grounds for default are clearly established.  Plaintiffs successfully served Alamo with process, and Alamo has been wholly unresponsive despite ample notice and sufficient time to respond. *See Sanchez v. Maddies Mayhem, LLC*, No. 4:19-CV-00574-SDJ-CAN, 2020 WL

4808604, at *3 (E.D. Tex. July 27, 2020), *report and recommendation adopted*, No. 4:19-CV-574, 2020 WL 4785046 (E.D. Tex. Aug. 18, 2020).  No evidence of mistake or excusable neglect exists. There also does not appear any basis upon which the Court would be obligated to set aside the default.  *See id.*  In sum, Plaintiffs have met the procedural requirements for default judgment.

### *Sufficient Basis in the Pleadings to Enter Default Judgment*

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true."  *Liquid Capital of Am. Corp. v. Effective Bus. Sols. Inc.*, No. 3:18-CV-3102-S-BH, 2020 WL 2950412, at *4 (N.D. Tex. Mar. 30, 2020) (citing *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016)), *report and recommendation adopted*, No. 3:18-CV-3102-S-BH, 2020 WL 2926471 (N.D. Tex. June 2, 2020).   However, "[t]here must [still] be a sufficient basis in the pleadings for the judgment entered."  *Sanchez*, 2020 WL 4808604, at *4 (citing *Nishimatsu*, 515 F.2d at 1206); *see Graham*, 2017 WL 2600318, at *1.  Only well-pleaded facts, not conclusions of law, are presumed to be true.  *Nishimatsu*, 515 F.2d at 1206.[5]  Upon review of Plaintiffs' Second Amended Complaint [Dkt. 43], Motion for Default Judgment [Dkt. 60], and Supplement [Dkt. 76], the Court finds that Plaintiffs have pleaded a sufficient basis to award default judgment on the breach of contract claim.

---

[5] In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8."  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).  Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required.  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This low threshold is less rigorous than that under Rule 12(b)(6), however; recognizing that "a defendant ordinarily must invoke Rule 12 in order to avail itself of that Rule's protections, [and] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context."  *Id.* at n.3.

### *Breach of Contract*

To succeed on a breach of contract claim under Texas law, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 500 (5th Cir. 2018) (quoting *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).  Plaintiffs' live pleading avers Alamo "breached the terms of the contract at issue by failing to make the payments for the claims as set forth in the Agreement" [Dkt. 43 at 4].  CoFour entered into the Agreement with Alamo for third-party billing services, whereby Alamo would process and file medical billing claims for CoFour's sales of durable medical equipment [Dkt. 76 at 3].  Alamo's obligations under the Agreement "included responsibility for 'receiving orders;' 'entering orders for DME;' 'billing Claims to the appropriate Payor;' 'collecting monies from Payors for the Claims;' and 'appealing Claim denials as commercially reasonable'" [Dkt. 76 at 3-4].  Under the Agreement, Alamo also agreed to "provide [Co-Four] with a fifteenth (15) and last day of the month report detailing each payment received for each Claim during the associated time frame" [Dkt. 76 at 4].  As consideration, CoFour agreed to pay Alamo a service fee of twenty percent "of all amounts recovered by Alamo on Co-Four's claims" for "performing the Contracted Plan coordination of benefits" and "all related billing services" [Dkt. 76 at 4].  Plaintiffs submitted a copy of the Agreement itself, accompanied by a sworn business record affidavit by Charles G. Copeland [Dkt. 76-1]. Plaintiffs have sufficiently shown the existence of a valid contract.

As to performance and breach, Plaintiffs provide itemized reports of the specific number of claims submitted to Alamo pursuant to the Agreement, the status of those claims, and the value of the uncollected claims.  Plaintiffs aver they have performed under the contract by submitting

"no less than 1,085 claims to be collected by Alamo" [Dkt. 76 at 4].  As evidence of performance, Plaintiffs provide a Master Claim Report, detailing all claims submitted by CoFour to Alamo in accordance with the Agreement, including the claim information, claim timeline, and actual reimbursement of the claims [Dkt. 76-1 at 15-25]. As of April 24, 2019, out of 1,081 claims submitted pursuant to the Agreement, Alamo collected payment on 147 submitted claims and determined 293 claims to be non-billable, leaving 756 claims open and uncollected [Dkt. 76 at 5]. Plaintiffs provide Aging Reports for April through June 2019 showing the status of uncollected claims as evidence of Alamo's failure to perform under the Agreement [Dkt. 76-1 at 26-31]. Specifically, the Aging Reports show that the projected reimbursement for all claims submitted to Alamo is approximately $1.5 million, yet CoFour has only received roughly $276,500.00 in net reimbursements:

> Beginning no later than April of 2019, and continuing in May and June of 2019, Alamo failed to perform its contractual duty to collect on Co-Four's claims under the Agreement. As a result, by May of 2019, Co-Four had received payment for only 173 claims for a total paid amount of $353,436.06 with a net payment to Co-Four of $254,698.85 (after accounting for Alamo's service fee of $70,687.21 and a pump fee of $28,050.00). At that time, 771 open claims remained outstanding with a projected reimbursement amount to Co-Four of a total of $1,575,139.90.
>
> By June of 2019, Alamo entirely ceased its efforts to collect on Co-Four's claims. As a result, many of Co-Four's claims became time-barred and uncollectible as a result of the passage of time. Accordingly, at least 193 claims submitted by Co-Four to Alamo had been denied by the respective payors. Although Co-Four's claims as submitted should have resulted in a total reimbursement to Co-Four of more than $1.5 million, by the time Alamo ceased its collections operations in June, Co-Four had received only a total paid amount of $385,448.99 on 191 paid claims. After accounting for Alamo's 20% service fee of $77,089.61 and pump fee of $31,790.00, Co-Four received net reimbursement on its claims of a grand total of $276,569.38.

[Dkt. 76 at 5-6] (footnotes omitted).  Plaintiffs have shown performance and breach.

Finally, Plaintiffs aver that they have been harmed, specifically alleging contract damages from Alamo's breach total $1,050,536.04 [Dkt. 76 at 6].  Plaintiffs calculate the value of breach

by subtracting the net reimbursements it received from the total value of claims submitted to Alamo, and then deducting twenty percent to account for the service fee it would have paid had Alamo performed, as discussed more fully *infra* [Dkt. 76 at 6].  Plaintiffs have shown each of the four requisite elements to establish breach of contract are met, thus a sufficient basis in the pleadings exists to enter default judgment.  *See Aguacates Seleccionados JBR USA, LLC v. Bucks Fresh Produce, LLC*, No. 7:19-CV-338, 2020 WL 4883898, at *5 (S.D. Tex. Aug. 20, 2020) (finding the plaintiff is entitled to a default judgment on its breach of contract claim); *Bank of New York Mellon v. New Century Loan Servicing, LLC*, No. 4:17-CV-00646-ALM-CAN, 2019 WL 4728335, at *6 (E.D. Tex. July 18, 2019) (concluding the plaintiff set forth a sufficient basis in its pleading for each element of a breach of contract claim), *report and recommendation adopted*, No. 4:17-CV-646, 2019 WL 4722480 (E.D. Tex. Sept. 26, 2019).

*Damages*

Because there is a sufficient basis in the pleadings for default judgment, the Court must next look to the issue of damages.  The Court held an evidentiary hearing on Plaintiffs' damages, and subsequent thereto, Plaintiffs filed a Supplement with additional support.  To reiterate, Plaintiffs seek a default judgment in the amount of $1,077,995.58 [Dkt. 76 at 1].

### *Contract Damages (Actual and Compensatory)*

For unliquidated contract damages, "[t]estimony of the total amount due under a written instrument is legally sufficient to support an award of that amount in a default judgment proceeding."  *Tex. Commerce Bank v. New*, 3 S.W.3d 515, 517 (Tex. 1999).  This testimony can be in the form of affidavit, which is probative evidence of damages and is not hearsay.  *Sherman Acquisition II LP v. Garcia*, 229 S.W.3d 802, 811 (Tex. App.—Waco 2007, no pet.) ("a trial court may rely on affidavits in proving unliquidated damages in default judgments; in fact it is error to

not consider the affidavits.").  An affidavit from the moving party can satisfy this requirement.
*See Barganier v. Saddlebrook Apartments*, 104 S.W.3d 171, 173 (Tex. App.—Waco 2003, no pet.)
(citing *Texas Commerce Bank*, 3 S.W.3d at 516) ("The pleadings and affidavits filed by
[Defendant] constitute a record upon which the court may base a default judgment."); *InsureSuite,
Inc. v. MJS Mktg., L.P.*, No. 03-05-00822-CV, 2006 WL 2080684, at *5 (Tex. App.—Austin
July 28, 2006, no pet.) (finding affidavit from managing partner of moving party was probative
evidence as to damages).

Plaintiffs seek $1,050,536.04 in actual and compensatory damages on the breach of
contract claim [Dkt. 76 at 12-13].  As referenced *supra*, in support of such claim, Plaintiffs submit
the signed and sworn declaration of Plaintiff Charles G. Copeland, the Manager and sole Member
of Plaintiff CoFour, LLC ("Copeland Declaration") [Dkt. 76-1 at 2-4].  Copeland states that
CoFour and Alamo entered into the contract entitled "Billing & Contract Access Services
Agreement," effective September 1, 2018 [Dkt. 76-1 at 2-3].  Plaintiffs included a true and correct
copy the Agreement [Dkt. 76-1 at 5-13].  The Copeland Declaration states CoFour submitted 1,081
claims to Alamo for collection, of which 756 were collectable, with a projected outstanding
reimbursement value of $1,589,739.43 [Dkts. 76 at 6; 76-1 at 3, 27].  By June 2019, Alamo had
ceased its collection efforts and, of the total claims submitted, only 191 claims were collected upon
and payment received [Dkts. 76 at 6; 76-1 at 4, 27].  CoFour received a net reimbursement of
$276,569.38 on the 191 collected claims [Dkts. 76 at 6; 76-1 at 4, 31].  The remaining claims
amount to a total deficiency of $1,313,170.05 in gross receipts, and after deducting 20% for the
service fee that would have been paid,[6] the outstanding net reimbursement due to CoFour is

---

[6] The service fee is determined as percentage of the gross receipts collected from all claims collected by Alamo, where
"gross receipts" means "the actual payment received from a Payor for each Claim submitted" under the Agreement
[Dkt. 76 at 4].  The section 2(a) of the Agreement states, in relevant part:

$1,050,536.04 [Dkt. 76 at 6]. The attached records, including the Agreement, the Master Claim Report, and the Aging Reports support these dates and figures [Dkt. 76-1]. The Court therefore finds Plaintiff is entitled to $1,050,536.04 in actual and compensatory damages. *See Nicholson v. RaceFab, Inc.*, No. 6:17CV548, 2019 WL 642752, at *2 (E.D. Tex. Jan. 8, 2019), *report and recommendation adopted sub nom. Nicholson v. RaceFab*, 6:17-CV-548-JDK-KNM, 2019 WL 951172 (E.D. Tex. Feb. 26, 2019) ("The well-pled facts establish Plaintiff's claim for breach of contract and Plaintiff's entitlement to the requested actual damages.").

### *Attorney's Fees*

Plaintiffs request attorney's fees in the amount of $25,514.74 [Dkt. 76 at 11]. Plaintiffs' live pleading "ask[s] for their attorney's fees and costs from Defendants pursuant to the terms of the contract and as allowed by law" [Dkt. 43 at 5].[7] "In diversity cases state law governs the award of attorney's fees." *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 344 (5th Cir. 2021). The Texas Civil Practice and Remedies Code provides that a "person may recover

---

Client agrees to pay Company a service fee of Twenty Percent (20.0%) ("Service Fee") in consideration for performing the Contracted Plan coordination of benefits, *Access to In-Network Plan Participation*, and all related billing services. Client further agrees to pay any applicable taxes (i.e. sales tax) that might be owed as a result of the Company performing the Billing Services. The Service Fee shall be determined as a percentage of the Gross Receipts collected from all Claims paid by Payors. The term "Gross Receipts" shall mean the actual payment received from a Payor for each Claim submitted under this Agreement. Within three days of the fifteenth (15) and last day of each month, Company shall remit to Client the total Gross Receipts collected from all Claims, during the associated period, less the Service Fee. Along with such payment, Company shall provide Client with a fifteenth (15) and last day of the month report detailing each payment received for each Claim during the associated time frame (the "Bi-Monthly Claims Report"). If Company uses contract platform for billing and collection for benefit of Client, the 20% Service Fee will be automatically deducted from payments to Client on each bi-weekly reimbursement cycle.

[Dkt. 76-1 at 6].

[7] Plaintiffs' pleadings do not specify that they seek attorney's fees pursuant to § 38.001, but it is not a requirement that a party specifically cites the statute under which they stand to recover attorney's fees. *See Partners Lending Auto Grp., L.L.C. v. Leedom Fin. Servs., L.L.C.*, 432 F. App'x 291, 296 (5th Cir. 2011) (per curiam) (first citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); next citing *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008); finally citing *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1501 (5th Cir. 1992)) ("The issue of pleading—as distinguished from the substantive requirement of presentment—is a question of federal procedure governed by federal, not Texas, law. We have previously found that even though a party failed to cite Chapter 38 in its amended complaint, it may still recover fees under that statute if it clearly presented a claim for attorney's fees.") (internal citations omitted).

reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(8).  "[A]n award of reasonable attorney's fees is mandatory under § 38.001 if the plaintiff recovers damages for a breach of contract claim." *Theriot v. Transamerica Life Ins. Co.*, 354 F. Supp. 3d 713, 719 (E.D. Tex. 2017).  The Court "has the discretion to determine the appropriate amount of attorney's fees following a successful claim under section 38.001." *Crisalli v. ARX Holding Corp.*, 177 F. App'x 417, 421 (5th Cir. 2006) (citing *Coffel v. Stryker Corp.*, 284 F.3d 625, 640-41 (5th Cir. 2002)).  Parties are also "free to contract for a fee-recovery standard either looser or stricter than Chapter 38's." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009).  "When parties include such a provision in a contract, the language of the contract controls, rather than the language of the statute." *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 60 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Intercontinental Grp. P'ship*, 295 S.W.3d at 654-56).  "Attorneys fees that are recoverable as an element of damages, such as when sought under the terms of a contract, must be claimed in a pleading." *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996).  "It is at the discretion of the court to award or deny attorneys' fees provided for by contract; however, this discretion is limited when a contractually authorized provision for attorneys' fees exists between the parties." *Miller v. Ocwen Loan Servicing, LLC*, No. 4:13-CV-749, 2015 WL 3899574, at *1 (E.D. Tex. June 23, 2015) (citing *McDonald's Corp. v. Watson*, 69 F.3d 36, 45 (5th Cir. 1995); *Cable Marine, Inc. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. Unit B 1980)).  Here, Section 13(e) of the Agreement states: "Should either party incur attorney's fees, costs, and/or other expenses in order to enforce the terms of this Agreement, then the other party shall be liable

for all reasonable attorney's fees, costs, and expenses incurred" [Dkt. 76-1 at 12].  *See Miller*, 2015 WL 3899574, at *1; *Intercontinental Grp. P'ship*, 295 S.W.3d at 653.

The Court uses the "lodestar" method to calculate reasonable attorney's fees.  *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006); *see also Ceats, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG, 2019 WL 1857888, at *2 (E.D. Tex. Apr. 25, 2019) ("The amount of attorneys' fees under Texas and federal law is determined by (1) calculating a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and then (2) considering whether the lodestar amount should be adjusted upward or downward[.]") (internal quotation marks and alterations omitted).  In calculating a lodestar fee, the number of hours reasonably expended by the attorneys is multiplied by an appropriate hourly rate in the community for such work.  *See Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003).  The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence.  *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  After calculating the lodestar, the Court may either: (1) accept the lodestar figure; or (2) decrease or enhance it based on the circumstances of the case, after considering the *Johnson* factors.  *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).[8]  However, the lodestar is presumed to be reasonable and should only be modified in exceptional cases.  *See Watkins*, 7 F.3d at 457.

---

[8] The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases.  448 F.2d at 717-19.  Texas courts consider substantially similar factors when assessing reasonableness as the *Johnson* factors:

### *Number of Hours Expended Are Reasonably Necessary*

Upon review, the Court concludes the hours expended were reasonably necessary for prosecution of this cause.  Plaintiffs submitted the declaration of David L. Ovard ("Ovard Declaration"), a member with Clark Hill, PLC, who has practiced law in the State of Texas since 1998 [Dkt. 76-2].  Plaintiffs provide hourly billing invoices in connection with the Ovard Declaration.  Plaintiffs' billing history adequately reflects the date, time involved, and the nature of the services performed.  Ovard describes the legal work itemized in the accompanying invoices, including: preparing and filing the complaint and amended complaints, preparing case strategy, evaluating removal and remand options, preparing initial disclosures, preparing the joint status report and attending the Rule 16 management conference, perfecting service of process on defendants, and evaluating and preparing pleadings necessary for the request for entry of default and motion for default judgment [Dkt. 76-2 at 4].  The invoices detail 63.2 total hours worked on Plaintiffs' behalf, for a total of $33,162.00 in billed and unbilled fees [Dkt. 76-2 at 3].  Not all hours are attributable to Plaintiffs' claims against Alamo for which default judgment is sought, and this time must be segregated out from the award of fees.  Ovard attests that is it his "opinion that the reasonable and necessary attorneys' fees incurred by Plaintiffs in pursuit of their contract claim against Alamo totals $25,514.74[9] after segregating and excluding fees not reasonably and

---

The factors a fact finder should consider when determining the reasonableness of a fee include: the time, labor, and skill required to properly perform the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal community for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation and ability of the lawyer performing the services.

*Wilkerson v. Atascosa Wildlife Supply*, 307 S.W.3d 357, 359 (Tex. App.—San Antonio 2009, pet. denied) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).  Under Texas law, "[t]here does not need to be evidence on all these factors in order to support an attorney's fees award."  *Id.*

[9] Ovard states the following attorney's fees are billable after deducting the value of segregated time reflected on the invoices and accounting of fees unbilled to date: $2,152.50, $12,484.50, $4,284.75, and $5,794.75 [Dkt. 76-2 at 3-4]. Adding those subtotals together, the total billable hour amount is less than $25,514.74, a discrepancy of approximately $800 [*See* Dkt.76-2 at 8].  The discrepancy appears to be a result of double-counting the July 20 fees.

necessarily attributable to the pursuit of Plaintiffs' breach of contract claims against Alamo" [Dkt. 76-2 at 3]. [10]  Again, the reasonableness and accuracy of Plaintiffs' counsel's billing records are not disputed.  The Court has independently reviewed the billing invoices and has found no duplicative, excessive, or otherwise improper hours billed therein.  *See KeyCorp v. Holland*, No. 3:16-CV-1948-D, 2017 WL 606617, at *7 (N.D. Tex. Feb. 15, 2017).[11]

Upon review of the billing records, and after segregating per the Ovard Declaration, the following billable hours are attributable to each person: Jennifer Wade (30.45 hours),[12] David Ovard (3.5 hours),[13] Price Anderson (1.2 hours),[14] Caleb Davis (0.5 hours),[15] Daniel

---

[10] Generally,

> parties claiming attorney's fees must "segregate fees between claims for which they are recoverable and claims for which they are not" and are "required to show that attorney's fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees."

*Franklin D. Azar & Assocs., P.C. v. Bryant*, No. 417CV00418SDJKPJ, 2020 WL 6531938, at *9 (E.D. Tex. Oct. 2, 2020) (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006)), *report and recommendation adopted*, No. 417CV00418SDJKPJ, 2020 WL 6504305 (E.D. Tex. Nov. 5, 2020).

[11] However,

> if a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing.  It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention.

*KeyCorp*, 2017 WL 606617, at *7.

[12] For the billing entries attributed to Ms. Wade, no segregation was declared for the entries for the July 20,2020 invoice – 3.5 hours in total.  Ovard states that the following entries on the October 23, 2020 invoice are only 50% attributable [Dkt. 76-2 at 3]: 4.1 hours on September 11, 2020, which segregates to 2.05 hours; 2.9 hours on September 14, 2020, which segregates to 1.45 hours; and 0.6 hours on September 30, 2020, which segregates to 0.3 hours.  In total, 3.8 hours were segregated out, and of the 24.10 total hours reflected by the billing entries on the October 23, 2020 invoice, 20.3 hours remain after segregation [Dkt. 76-2 at 11-12].  Ovard states that one entry on the November 19, 2020 invoice should be segregated 50% [Dkt.76-2 at 3], the entry on October 13, 2020 for 1.5 hours, which amounts to 0.75 hours after segregation.  Subtracting 1.5 hours from the 7.40 hours attributed to Ms. Wade on the November 19 invoice totals 6.65 billable hours [Dkt. 76-2 at17-18].  The remaining unbilled fees do not include any billing entries for Ms. Wade.  In total, 30.45 billable hours are attributable to Ms. Wade.

[13] For the entries attributable to Mr. Ovard, his declaration states that his entry for 3.0 hours on January 28, 2021 is not attributable, nor is the entry for 1.5 hours on February 2, 2021 [Dkt. 76-2 at 3-4].  Two billing entries remain in full after segregation, 1.0 hour on January 12, 2021 and 2.5 hours on February 11, 2021 [Dkt. 76-2 at 21], for a total of 3.5 billable hours after deducting the segregated time.

[14] A single billing entry exists for Mr. Anderson, which Ovard states is 50% attributable [Dkt. 76-2 at 3].  The February 24, 2021 entry for 2.4 hours, after subtracting out 50%, leaves 1.2 hours attributable and billable for Mr. Anderson [Dkt. 76-2 at 21].

[15] Ovard states that one entry for Mr. Davis should be fully segregated, specifically, the January 28, 2021 entry for 5.70 hours [Dkt. 76-2 at 4].  After deducting the January 28 entry in full, one entry from February 22, 2021 for 0.5 hours remains as attributable and billable for Mr. Davis [Dkt. 76-2 at 21].

Troiano (7.45 hours),[16] and paralegal Susan Piland (3 hours)[17] after segregation.  Accordingly, having reviewed the Ovard Declaration, corresponding Exhibits, and after calculating the total segregated hours to deduct from the total hours billed, the Court finds the hours expended were reasonably necessary to prosecute this matter and are recoverable.  *See Watkins*, 7 F.3d at 457.

### *Reasonable Hourly Rate*

The Court also concludes the hourly rates billed are reasonable.  The "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits."[18]  *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."  *Id.*  However, "the district court is itself an expert in assessing these matters."  *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976).  Here, the Ovard Declaration provides the follow rates for each person who billed time for this matter: Jennifer Wade, $615.00 per hour; David Ovard, $595.00 per hour; Price Anderson, $370.00 per hour; Caleb Davis, $345.00 per hour; Daniel Troiano, $385.00 per hour; and paralegal Susan

---

[16] For Mr. Troiano, Ovard states that one entry is only 50% attributable and should be segregated, specifically the February 22, 2021 entry for 1.7 hours [Dkt. 76-2 at 4].  The Court notes that no billing entry dated February 22, 2021 exists for Mr. Troiano, however, there is a May 28, 2021 entry for 1.7 hours; as such, the Court will segregate 50% of this entry, which leaves 0.85 hours as attributable for this entry [Dkt. 76-2 at 21].  The remaining billing entries for Mr. Troiano are not segregated: 1.3 hours, 0.2 hours, and 0.2 hours on May 28, 2021; 0.4 hours, 0.4 hours, 0.3 hours, and 1.4 hours on June 1, 2021; 0.3 hours, 0.9 hours, 0.3 hours on June 2, 2021; 0.3 hours on June 9, 2021; 0.3 hours on June 16, 2021; and 0.3 hours on July 20, 2021 [Dkt. 76-2 at 21-22].  After deducting 0.85 hours from 8.3 total hours, 7.45 hours are attributable to Mr. Troiano.

[17] Ovard identifies one paralegal billing entry for Ms. Piland to be segregated, specifically, the January 4, 2021 entry for 0.3 hours [Dkt. 76-2 at 4].  In all, 3.0 hours are attributable to Ms. Piland after subtracting 0.3 hours from the 3.3 total hours attributed to Ms. Piland, as evidenced by the entries on the November 19, 2020 invoice (1.0 hour) and the un-invoiced fees to date in 2021 (2.0 hours total) [Dkt. 76-2 at 17-21].

[18] The latest report by the State Bar of Texas shows that a reasonable and customary hourly rate in the Dallas–Fort Worth–Arlington Region (which includes Collin County) for an attorney with more than 25 years of experience is $350 per hour.  The average median rate in the same area is $300 per hour for attorneys practicing commercial litigation.  The median average rate at firms with more than 400 attorneys, of which Clark Hill is one, is $425 per hour for the state of Texas overall, and $392 per hour in the Dallas–Fort Worth–Arlington Region.  *See* State Bar of Texas, Dep't of Research & Analysis, 2015 Hourly Fact Sheet, http://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends; *see also Vanliner Ins. Co. v. DerMargosian*, No. 3:12–cv–5074–D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (the Court is an expert regarding reasonableness of attorney fees).

Piland, $200.00 per hour[19] [Dkt. 76-2 at 4].  Ovard avers the rates are reasonable, based on his experience litigating similar cases in the Eastern District:

> I have handled multiple cases previously in the Eastern District of Texas including many involving the same subject-matter as that presented here. Based on my experience as an attorney and familiarity with lawsuits involving issues similar to the issues in this lawsuit, all attorneys' fees and costs incurred by Plaintiffs in this matter (except those specifically segregated as noted) have been reasonable.

[Dkt. 76-2 at 4].  The sworn declaration states the fees billed are comparable to those "customarily charged for similar services in similar litigation in the Eastern District of Texas" and that "all attorneys' fees incurred in this matter have been necessary and reasonable" [Dkt. 76-2 at 4]. Federal district courts in Texas have found hourly rates at or above $400.00 to be reasonable in other cases.  *See Moctezuma v. Islas*, No. 4:18-CV-00342-ALM-CAN, 2020 WL 3087136, at *4 (E.D. Tex. May 7, 2020) (collecting cases), *report and recommendation adopted*, No. 4:18-CV-342, 2020 WL 3078073 (E.D. Tex. June 10, 2020); *NSEW Holdings LLC v. Wells Fargo Bank, N.A.*, No. 4:15-CV-828, 2017 WL 1030313, at *8 (E.D. Tex. Mar. 17, 2017) (finding reasonable $250 and $569 per hour given the attorneys' range of experience).

In sum, calculating the total fees by multiplying each person's hourly rate by the number of hours billed after segregation, Plaintiffs have documented $24,894.00 in fees recoverable after segregation.[20]  Accordingly, having reviewed the affidavit and supporting documentation, and in consideration of the *Johnson* factors, the Court finds $24,894.00 constitutes fair and reasonable attorney's fees for this matter.

---

[19] "[T]he prevailing practice in the Eastern District of Texas is to charge clients for paralegal and law clerk work on a separate hourly basis. Paralegal and law clerk fees are therefore recoverable here at the relevant market rates." *Lewallen v. City of Beaumont*, No. CIV.A. 1:05-CV-733TH, 2009 WL 2175637, at *5 (E.D. Tex. July 20, 2009).

[20] The Court determines that Plaintiffs have documented $24,894.00 in reasonable and necessary attorney's fees based on the following billable amounts per person: Jennifer Wade, $18,726.75, based on 30.45 hours at a rate of $615 per hour; David Ovard, $2,082.50, based on 3.5 hours at a rate of $595 per hour; Price Anderson, $444.00, based on 1.2 hours at a rate of $370 per hour; Caleb Davis, $172.50, based on 0.5 hours at a rate of $345 per hour; Daniel Troiano, $2,868.25, based on 7.45 hours at a rate of $385 per hour, and paralegal Susan Piland, $600.00, based on 3 hours at a rate of $200 per hour.

### Costs and Expenses

Rule 54 permits a prevailing party to collect fees other than attorney's fees to the prevailing party. FED. R. CIV. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."). Courts in the Fifth Circuit "adhere to the principle that reasonable out-of-pocket expenses that are part of the costs normally charged to a fee-paying client may be recovered as part of an attorney's fee award." *Lewallen v. City of Beaumont*, No. CIV.A. 1:05-CV-733TH, 2009 WL 2175637, at *15 (E.D. Tex. July 20, 2009) (collecting cases). "A court 'may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so.'" *Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-CV-543, 2016 WL 2758183, at *17 (E.D. Tex. May 12, 2016) (quoting *Pacheco v. Meneta*, 448 F.3d 783, 794 (5th Cir. 2006) (citation omitted)).

Here, Plaintiffs seek out-of-pocket costs that total $1,944.80 [Dkt. 76 at 11-12].[21] The costs and fees invoiced by Plaintiffs' counsel do not constitute taxable costs under federal law;[22] however, the fee-shifting provision in the Agreement expressly permit the Court to award these

---

[21] Plaintiffs submit the following invoices accounting for these fees: $798.99, invoiced on July 20, 2020, for the costs of filing fees in Collin County court, and fees for service of process [Dkt. 76-2 at 7-8]; $468.95, invoiced on October 23, 2020, for the costs for online research, mail services, and service of process [Dkt. 76-2 at 11-14]; $179.13, invoiced on November 19, 2020, for the cost for online research and service of process [Dkt. 76-2 at 17-18]; and $497.73, reflecting the balance of fees and costs incurred to date, including fees for service of process, reports from the Secretary of State for the State of Texas, online research fees, and the cost of travel to the hearing on damage for the instant Motion [Dkt. 76-2 at 25].

[22] Under the federal statute for recovering fees, the fees and costs permitted to be taxed as part of a judgment are:
> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of [Title 28]; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28.U.S.C. § 1828].

28 U.S.C. § 1920. Some fees are not appropriate to award as part of a default judgment, including fees for private process services, mail services, and legal research fees. *See, e.g.*, *Bank of New York Mellon as Tr. for Certificate Holders of CWALT, Inc. v. New Century Loan Servicing, LLC*, No. 417CV00646ALMCAN, 2019 WL 4728335, at *13 (E.D. Tex. July 18, 2019), *report and recommendation adopted*, No. 4:17-CV-646, 2019 WL 4722480 (E.D. Tex. Sept. 26, 2019); *Feld Motor Sports, Inc.*, 2016 WL 2758183, at *20 (citing *Stoffels v. SBC Comm'ns, Inc.*, No. SA-05-CV-0233-XR, 2012 WL 2122191, at *3 (W.D. Tex. June 11, 2012)).

costs if reasonable and necessary.  *See In re Frazin*, No. 02-32351-BJH-13, 2017 WL 7050632, at *44 (Bankr. N.D. Tex. Dec. 22, 2017) (finding "the cost of reasonable computerized legal research is recoverable as attorneys' fees"); *Lewallen*, 2009 WL 2175637, at *10, *16-17 (permitting in the fee-shifting context award of fees covering private process servers, mailing expenses, and attorney costs for travel time)[23]; *Wilkerson*, 307 S.W.3d at 358-59 (permitting reasonable and necessary travel fees for an attorney, noting the "parties have not cited nor have we discovered any Texas case that precludes the recovery of fees for an attorney's travel time"). The Court agrees that Plaintiffs are entitled to $1,944.80 for such costs incurred as reasonable and necessary for prosecuting the breach of contract claim against Alamo.

### *Post-Judgment Interest*

Under 28 U.S.C. § 1961(a), in diversity cases, "post-judgment interest is calculated at the federal rate."  *Can Cap. Asset Servicing, Inc. v. Whitaker Trucking, LLC*, No. 9:19-CV-00071, 2020 WL 4724320, at *4 (E.D. Tex. Feb. 10, 2020), *report and recommendation adopted*, No. 9:19-CV-00071, 2020 WL 2110633 (E.D. Tex. May 4, 2020) (citing *Boston Old Colony Ins. Co. v. Tiner Assoc., Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (noting that federal post-judgment interest applies even in diversity cases)).  28 U.S.C. § 1961 provides, in pertinent part, that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and that such "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly

---

[23] In this case, Plaintiffs seek reimbursement of costs for counsel's travel from his office in Frisco, Texas, to the Court in Sherman, Texas, for an in-person hearing on Plaintiffs' Motion for Default Judgment [Dkt. 76-2 at 25].  Travel costs and expenses can be recovered where they are sufficiently documented and are reasonable.  *Lewallen*, 2009 WL 2175637, at *16 ("Plaintiff has provided sufficient documentation to support its travel costs and expenses (including mileage, meals, parking and accommodations), which the Court finds to be reasonable and recoverable as out-of-pocket expenses.").  The description of the costs indicate Plaintiffs' fee is based on a calculation of travel costs, rather than billing the attorney's time at their usual rate for such travel.  The invoice shows a fee of 56 cents per mile for total mileage of 94.62 [Dkt. 76-2 at 25].  Fifty-six cents per mile is the current per diem rate set by the IRS and is thus a reasonable basis for the costs assessed.  *See* Internal Revenue Service, *Standard Mileage Rates*, https://www.irs.gov/tax-professionals/standard-mileage-rates (last visited Nov. 10, 2021).  Thus, the Court finds reasonable the travel expenses sought as recoverable costs.

average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Post-judgment interest is "awarded as a matter of course" and "is not discretionary." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). Plaintiffs are therefore entitled to an award of post-judgment interest at the rate published for the week ending prior to the date of judgment until the date paid.[24]

Upon review of the instant Motion and Supplement, and the documentation submitted in support of the total award sought, the Court finds Plaintiffs should be awarded $1,050,536.04 in compensatory damages, $24,894.00 in attorney's fees, and $1,944.80 in reasonable fees and costs, for a total award of $1,077,374.84, and recommends Plaintiffs be awarded this amount as judgment for Alamo's default on the breach of contract claims as discussed herein. The Court further recommends Plaintiffs be awarded post-judgment interest at the prevailing federal rate.

### CONCLUSION AND RECOMMENDATION

The Court recommends Plaintiffs Charles Copeland and CoFour, LLC's Motion for Default Judgment against Alamo Billing Company [Dkt. 60] be **GRANTED** as set herein. Default judgment should be **GRANTED** as to Plaintiffs' claim for breach of contract only as to Defendant Alamo Billing Company. Plaintiffs should be awarded a default judgment as to its breach of contract claim against Defendant Alamo in the amount of $1,077,374.84, accounting for $1,050,536.04 in contract damages, $24,894.00 in attorney's fees, and $1,944.80 in costs, in addition to post-judgment interest. All other requested relief should be denied at this time.

---

[24] Plaintiffs request a post-judgment interest rate of 0.08% [Dkt. 76 at 1]; however, the post-judgment rate will be set based on the rate on the date judgment is entered. Post-judgment interest rates are available on the Eastern District of Texas website: http://www.txed.uscourts.gov/?q=post-judgment-interest-rates.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 17th day of December, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE